IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00349-KLM

MARK A. HARMAN,

　　　　Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

　　　　Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　　　This matter is before the Court[1] on the **Social Security Administrative Record** [#9],[2] filed on May 8, 2014, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Carolyn Colvin, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). *See generally Compl.* [#1]. On July 9, 2014, Plaintiff filed an Opening Brief [#17] (the "Brief"). Defendant filed a Response [#20] in opposition and Plaintiff filed a Reply [#21]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The Court has reviewed the entire case file and the

_____

[1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent Form* [#24]; *Order of Reference* [#25].

[2] "[#9]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I.  Factual and Procedural Background

Plaintiff alleges that he became disabled on August 16, 1999, at the age of thirty-two.  Tr. 218.[3]  On April 27, 2009[4], he filed for Title XVI supplemental security income.  Tr. 218.  On October 24, 2011, an Administrative Law Judge (the "ALJ") issued an unfavorable decision.  Tr. 76-85.  Plaintiff appealed the decision to the Appeals Council, which vacated the October 24, 2011 decision and remanded for further proceedings.  Tr. 91-96.  On October 18, 2012, the ALJ entered a second decision, finding that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act."  Tr. 22.

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 27, 2008 (the date of Plaintiff's initial application for benefits).  Tr. 12.  The ALJ found that Plaintiff suffers from the following severe impairments: (1) mild degenerative changes of the lumbar spine; left hand pain with findings of reduced grip strength; a major depressive disorder; an anxiety disorder; a learning disorder; and borderline intellectual functioning.  Tr. 12.  However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9-1, 9-2, 9-3, 9-4, 9-5, 9-6, and 9-7 by the sequential transcript numbers instead of the separate docket numbers.

[4]  Plaintiff previously filed an application for supplemental security income benefits on May 27, 2008.  Tr. 10.  That application was reopened by the ALJ and discussed in his October 18, 2012 decision.  Tr. 10 (citing 20 § C.F.R. 416.1488).

416.926).”  Tr. 13.  The ALJ next concluded that Plaintiff has the residual functional

capacity (“RFC”)

> to perform medium work as defined in 20 CFR 416.967(c) except he should
> be allowed to alternate between sitting, standing and walking, every 30 to 60
> minutes; he should never climb ladders, ropes or scaffolds and should
> occasionally [climb] stairs and ramps, balance, stoop, kneel, crouch or crawl;
> he should avoid concentrated exposure to extreme cold, vibration and
> hazards; the work should be unskilled (SVP 1 or 2[5]); and he should have
> decreased interpersonal contact with the general public, coworkers and
> supervisors because he is moderately impaired with regard to these social
> interactions, and he would be moderately impaired in the ability to maintain
> attention and concentration for extended periods of time.

Tr. 14.  Based on the RFC and the testimony of an impartial vocational expert (“VE”), the

ALJ found that Plaintiff was unable to perform any past relevant work but that “there are

jobs that exist in significant numbers in the national economy that [Plaintiff] can perform .

. . .”  Tr. 20-21.  Specifically, based on the testimony of the VE, the ALJ concluded that

Plaintiff could perform the representative occupations of cleaner, hand packer, and

machine packer.  Tr. 21.  He therefore found Plaintiff not disabled at step five of the

sequential evaluation.  Tr. 22.  The ALJ’s decision has become the final decision of the

Commissioner for purposes of judicial review.  20 C.F.R. § 416.1481.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance
> benefits and Supplemental Security Income to persons who have a
> “disability.”  A person qualifies as disabled, and thereby eligible for such

---

[5] “SVP of 2” refers to a “specific vocational preparation” of up to 30 days, while “SVP of 1”
refers to a short demonstration.  This is the amount of lapsed time required by a typical worker to
learn techniques, acquire the information, and develop the facility needed for average performance
in a specific job. (Dictionary of Occupational Titles, United States Department of Labor, 4th Edition,
Revised 1991). (footnote in original).

benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).   Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).   The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.     42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."   *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).   However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.   To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were

applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).   However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).   In other words, the Court does not reexamine the issues de novo.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to

5

perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient [RFC] to perform other work in the national economy."  *Id.*

## B.   Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record."  *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In addition, "if the ALJ failed to apply the

6

correct legal test, there is a ground for reversal apart from a lack of substantial evidence."

*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision denying him supplemental security income. *Brief* [#17] at 12.  Specifically, Plaintiff argues that: (1) the ALJ's definition of the term "moderate" is unsupported by substantial evidence, (2) the ALJ improperly rejected the opinions of Carlos Rodriguez, Ph.D. ("Dr. Rodriguez") and Richard Madsen, Ph.D. ("Dr. Madsen"), and (3) the ALJ failed to account for Plaintiff's alleged reading and writing limitations. *Id.* at 18.  The Court addresses each argument in turn.

### A.     The ALJ's Definition of the Term "Moderate"

As Plaintiff explains, as part of the RFC determination, the ALJ "made a finding that [P]laintiff is moderately impaired with regard to social interactions and in [his] ability to maintain attention and concentration for extended periods of time."  *Brief* [#17] at 22. Specifically, the ALJ explained

> [Plaintiff's] desire for social avoidance and his lack of hygiene would necessitate decreased interpersonal contact at a moderate degree of impairment.  The variable mental status testing results and complaints of anxiety are the basis for the moderate degree of impairment in the ability to maintain attention and concentration for extended periods of time—conclusions which are consistent with the most severe limitations imposed by any State agency psychological expert [ ].  When using the "moderate" modifier, the undersigned defines this term to mean [Plaintiff] would have more than mild restrictions in these particular functions, such that he would be subject to difficulties for up to 15% of the workday, but he would retain the capacity to perform those functions.

Tr. 20.  Plaintiff argues that the ALJ came up with the number "15%" "out of thin air" and that this number is not supported by substantial evidence in the record. *Brief* [#17] at 23. In short, as Plaintiff clarifies in his Reply, Plaintiff's argument is that the ALJ did not link his

conclusion to evidence from the record.  *Reply* [#21] at 6 ("It is unclear from the decision what evidence formed the basis of the ALJ's conclusion that [P]laintiff would have difficulties for 15% of the workday, but no less or no more.").

The ALJ "is charged with determining a claimant's RFC from the medical records." *Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012).  An RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical or mental activities."  SSR 96-8p, 1996 WL 374184 at * 2.  It is assessed "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements.'"  *Id.*  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo,* 682 F.3d at 1288.

Recognizing that "a moderate impairment is not the same as no impairment at all," *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.2007), and "supports the conclusion that the individual's capacity to perform the activity is impaired," the Tenth Circuit has required that such limitations be accounted for with precision in the ultimate determination of the claimant's residual functional capacity. *Jaramillo v. Colvin*, 576 F.App'x. 870, 876 (10th Cir. 2014) (internal quotation marks and citation omitted). This requirement in turn "demands that the ALJ express plaintiff's moderate impairments in mental functioning 'in terms of work-related functions' or '[w]ork-related mental activities.'"  *Id.* at 876 (quoting Social Security Ruling 96-8p, 1996 WL 374184 at *6 (SSA July 2, 1996)).  A residual functional capacity expressed as being limited only to unskilled work requiring simple, repetitive tasks

is insufficient to meet these requirements. *Id.*

In this case, the ALJ explained what the term "moderate" meant in terms of Plaintiff's RFC in compliance with the Tenth Circuit case law explained above. As the ALJ explained, in the RFC "moderate" "mean[s] [Plaintiff] would have more than mild restrictions in these particular functions, such that he would be subject to difficulties for up to 15% of the workday, but he would retain the capacity to perform those functions." Tr. 20. Contrary to Plaintiff's argument, this definition means that Plaintiff "would be subject to difficulties," Tr. 20, not that Plaintiff would be off task or unable to perform the job at hand. *See Stephens v. Colvin*, 2015 WL 3430586, at *6 (N.D. Cal. May 28, 2015) ("Put differently, being 'off task' and an inability to maintain 'concentration, persistence or pace' are not the same thing. A person could be focused on the task at hand for an entire hour, for example, and complete only 85% of a project due to reduced pace; this does necessarily mean that the person was 'off task' for 15% of the time."). Further, contrary to Plaintiff's assertion, the ALJ based the RFC on the evidence in the record. In reaching the RFC, the ALJ carefully summarized the evidence in the record, including both the physical and mental limitations alleged by Plaintiff; discussed the credibility of the evidence; and explicitly explained his conclusions regarding Plaintiff's mental limitations. Tr. 14-20. For example, with regard to the mental limitations taken into account in the RFC, the ALJ summarized various part of the record and stated:

> the evidence of mental functional difficulties also fails to persuade the Administrative Law Judge that the claimant lacks the capacity to perform less complex and less socially engaged tasks on a sustained basis. The most consistent observations have been of poor hygiene and a blunted or depressed presentation—which were taken into consideration when determining the residual functional capacity (Exhs. B6F; B12F; B19F; B21F; B24F). But there is no intervening evidence to establish whether any of the

claimant's contentions regarding his depression and anxiety symptoms continue when secondary gain motivation is not at issue.    Despite observations of poor hygiene and allegations of homelessness, there are no indications he requires supervision to carry out his activities of daily living, that they are accomplished inappropriately, or that he is unable to sustain them (Id.).  He reports he is socially avoidant and irritable, and his responses on mental status examination show impaired social judgment, but the claimant also reports that he has maintained a girlfriend for over a decade. Interviewers describe him as cooperative and appropriate, and the record shows he is able to travel within the community and act independently (Exhs. B6F; B12F; B19F; B21F; B24F).  During the hearings, the undersigned observed that he demonstrated no abnormal social behaviors and was able to understand and follow the proceedings and all lines of questioning.  The claimant has also shown the capacity to function in an appropriate manner during consultative evaluations, where there would clearly be more tension. As for cognitive functioning, his speech was described as "slow" in June 2008, when his intellectual functioning was placed within the borderline range, but his performance on mental status testing has been erratic, showing correct responses to only 19 of 30 questions in April 2010, but to 27 of 30 questions in August 2011 and 26 of 30 questions in August 2012 (Exh. B5F; B12F; B21F; B24F).  While the undersigned finds a basis to assign some degree of limitations in social interactions and in maintaining attention and focus, there is insufficient basis to conclude the claimant is incapable of performing the basic mental functional capacities of understanding, remembering and carrying out instructions, making judgments, responding appropriately to supervisors, coworkers and usual work situations, and dealing with changes in work setting.

Tr. 16.  The last sentence makes clear that this is the ALJ's basis for finding "some degree

of limitations" and he later states that this is a moderate limitation defined "to mean

[Plaintiff] would have more than mild restrictions in these particular functions, such that he

would be subject to difficulties for up to 15% of the workday, but he would retain the

capacity to perform those functions."   Tr. 20.   In addition, directly before defining

"moderate," the ALJ states that "[t]he variable mental status testing results and complaints

of anxiety are the basis for the moderate degree of impairment in the ability to maintain

attention and concentration for extended periods of time—conclusions which are consistent

with the most severe limitations imposed by any State agency psychological expert [ ]."  Tr.

20.   Based on all of the above information provided by the ALJ in reaching his RFC, including the definition of "moderate," the Court concludes that the RFC is supported by substantial evidence in the record.  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).   As a result, the Court concludes that the ALJ has not committed reversible error in his definition of the term "moderate."

**A.   Whether the ALJ Failed to Properly Weigh the Opinions of Dr. Rodriguez and Dr. Madsen**

Plaintiff argues that the ALJ failed to adequately weigh the opinions of Dr. Rodriguez and Dr. Madsen.  *Brief* [#17] at 25-38.

**1.   Dr. Rodriguez**

With regard to Dr. Rodriguez, Plaintiff maintains that the ALJ rejected this opinion "because of inconsistencies between his narrative report and testing results, and [P]laintiff's lack of treatment."  *Id.* at 26-27.  Plaintiff argues that "[n]either of these is a valid reason to reject the examining physician's opinion.  *Id.* at 27.

As an initial matter, the Court notes that the ALJ concluded that Plaintiff "has not established an ongoing treatment relationship with this doctor, he merely sees him when he needs to obtain documentation of some type of ongoing disability for State assistance, or at the request of his attorney."  Tr.  19.[6]  Plaintiff does not argue that Dr. Rodriguez is a

---

[6]   Plaintiff testified that he visits Dr. Rodriguez as ordered by Social Services "to get recertification."  Tr. 52.

treating doctor.[7]  *See generally Brief* [#17].  Nonetheless, the opinions of "other sources" such as Dr. Rodriguez still must be considered, applying the same factors as are generally used to assess treating source opinions.  Social Security Ruling 06-03p, 2006 WL 2329939 at *4 (SSA Aug. 9, 2006); 20 C.F.R. § 416.927(c)(1)-(6).  Among these factors are whether the opinion is supported by relevant evidence and whether the opinion is consistent with and supported by the other evidence of record.  *See* 20 C.F.R. § 404.1527(c)(3)-(4) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. . . . Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  The regulations do not require the ALJ to discuss all of the factors.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Here, the ALJ specifically noted that there were "significant inconsistencies between the narrative and test results when compared to the statement of limitations, the lack of intervening records, and the absence of even minimal medical management for allegedly severe symptoms of anxiety and depression."  Tr. 19.  The Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's . . . [and] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice."  *Adams*, 659 F.3d at 1301.  However, the Court notes that

---

[7]  A treating source is a medical professional capable of providing a detailed and longitudinal picture of a claimant's medical impairments.  20 C.F.R. § 404.1527(c)(2).  It is a relationship that requires both duration and frequency.  *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.").

the reasons given for the ALJ's finding of "significant inconsistencies" are supported by the record.

For example, Dr. Rodriguez met with Plaintiff once in 2011 and twice in 2012 with no intervening interviews. Tr. 499. In August 2011, Dr. Rodriguez reported that Plaintiff "talked to the examiner freely and rapport was easily established." Tr. 485. Dr. Rodriguez further reported that Plaintiff "did not display any unusual or bizarre behaviors during this evaluation. His attitude towards this evaluation is appropriate and he is cooperative." Tr. 485-86. Again, in August 2012, Dr. Rodriguez used the exact same language to describe their interaction. Tr. 493-94. However, on the Residual Functional Capacity Evaluation from completed by Dr. Rodriguez after the August 2011 examination, he noted that Plaintiff had "marked[8]" or "extreme[9]" limitations with regard to four of the five social interaction abilities evaluated. Tr. 491. In August 2012, he indicated that Plaintiff had "marked" or "extreme" limitations in each of the five abilities evaluated. Tr. 499. This contradiction between Dr. Rodriguez's report of his own experience interacting with Plaintiff and his conclusion regarding Plaintiff's social limitations was specifically noted by the ALJ. Tr. 19 ("The objective data shows variable performance on memory testing and problems with social judgment, but also depict the claimant as cooperative, appropriate and able to easily establish rapport, and without indication of neurocognititve impairment based upon Folstein testing. (Exhs. B21F; B23F)."). While Plaintiff argues that the ALJ's conclusion "that

---

[8] The form defines "marked" as follows: "Serious limitations in this area. The ability to function in this area is severely limited but not precluded." Tr. 498.

[9] The form defines "extreme" as follows: "Severe limitations in this area. No useful ability to function in this area." Tr. 498.

[P]laintiff's ability to easily establish a rapport with Dr. Rodriguez" was incorrect, it is not the role of the Court to weigh the evidence. *Brief* [#17] at 29. Plaintiff goes to great pains to explain that Plaintiff met with Dr. Rodriguez several times prior to the August 2012 evaluation. While this may be true[10], the Court cannot substitute its own analysis of the facts presented, it can only review "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Here, Dr. Rodriguez's report of his own interaction with Plaintiff does undermine his conclusion that Plaintiff has limited ability to interact socially.

Plaintiff also argues that it was improper for the ALJ to "reject Dr. Rodriguez's opinion because it was inconsistent with [P]laintiff's lack of treatment." *Brief* [#17] at 30. As noted above, the ALJ "accord[ed] no weight to Dr. Rodriguez's assessments" "[g]iven that there were "significant inconsistencies between the narrative and test results when compared to the statement of limitations, the lack of intervening records, and the absence of even minimal medical management for allegedly severe symptoms of anxiety and depression." Tr. 19. In challenging the last portion of the ALJ's conclusion regarding Dr. Rodriguez's opinion, Plaintiff cites to *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), which held that

> before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider (1) whether the treatment at issue would restore claimant's

---

[10] According to Dr. Rodriguez's notes, he met with Plaintiff on the following dates: August 12, 1999; August 7, 2000; October 10, 2001; September 19, 2002; February 28, 2007; February 25, 2008; March 21, 2009; January 28, 2010; May 3, 2011; July 28, 2012; and August 20, 2012. Tr. 499.

ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.

987 F.2d 1482, 1490 (internal quotation marks and citations omitted). *Thompson* focused on the ALJ's credibility determination of *the claimant*, not the weight afforded to an *expert opinion. Id.* Here, in contrast, the ALJ made clear that he "accords no weight to *Dr. Rodriguez's assessments*" based on several considerations, including "the absence of even minimal medical management for allegedly severe symptoms of anxiety and depression." Tr. 19. This does not implicate *Thompson.* Plaintiff offers no argument that it was improper for the ALJ to reject Dr. Rodriguez's opinion for this reason, among the other reasons provided. As a result, the Court concludes that the ALJ has not committed reversible error with respect to his treatment of Dr. Rodriguez's opinions. *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

**B.    Dr. Madsen**

With regard to Dr. Madsen's opinion, Plaintiff argues that "[t]he ALJ essentially rejected Dr. Madsen's opinion because he found it 'vague and not sufficiently defined.'" *Brief* [#17] at 32. Plaintiff argues that "[t]he ALJ cannot simply reject the opinion of his own consultative examiner because his opinion is vague or lacks sufficient definition. Rather, the ALJ has an obligation to properly develop the record by recontacting Dr. Madsen." *Id.* The ALJ did conclude that Dr. Madsen's analysis was "vague and [was] not sufficiently defined for [the ALJ] to determine functional capacity." Tr. 18. As a result, the ALJ afforded "little weight" to the opinion "and only to the extent [Dr. Madsen] indicates there

15

would be some declination of function in the areas of focus, concentration and social interaction, which are supported by the claimant's statements to consulting sources and his variable performance on mental status testing (Exhs. B6F; B12F; B19F; B24F)." Tr. 18-19.

Pursuant to 20 C.F.R. § 416.919p, the Commissioner reviews the report of a consultative examination to determine whether specific information has been furnished. 20 C.F.R. § 416.919p(a). If the report is "inadequate or incomplete," the Commissioner will contact the medical source who performed the consultative examination, give an explanation of the agency's evidentiary needs, and ask the medical source to furnish the missing information or prepare a revised report. *Id.* § 416.919p(b). A complete consultative examination report includes the following: (1) the claimant's major or chief complaints; (2) a detailed description of the claimant's history of the major complaints; (3) a description of pertinent positive and negative detailed findings based on the history, examination, and lab tests related to the major complaints and any other abnormalities or lack thereof found during the exam or lab tests; (4) the results of the lab tests; (5) the diagnosis and prognosis for the claimant's impairment; (6) a statement about what the claimant can still do despite the impairments; and (7) an explanation or comment by the medical source on the claimant's major complaints. *Id.* § 416.919n(c)(1)-(7). According to the applicable regulations, the ALJ must only request a revised medical opinion if the original one is "inadequate or incomplete." 20 C.F.R. § 416.919p(b). Here, the ALJ did not find Dr. Madsen's opinion to be either inadequate nor incomplete, he simply gave it less weight, while still relying on certain aspects of it, because he found it "vague" and "not sufficiently defined." Tr. 18. Although Plaintiff disagrees with the ALJ's decision to give less weight to Dr. Madsen's opinion, the ALJ was permitted to do so. *See Chavez v.*

16

*Colvin*, 2015 WL 1733767 at *14 (N.D. Ind. Apr. 15, 2015) ("The ALJ found Dr. Shamberg's statements regarding Chavez's abilities despite her impairments vague and non-specific. Because a report is not rendered incomplete if it is missing a statement regarding the claimant's abilities despite her impairments, the ALJ was not required to contact Dr. Shamberg to revise his report."); *see also Haddock v. Astrue*, No. 09-cv-01922-LTB, 2010 WL 2197403, at *6 (D. Colo. May 28, 2010) (remanding on other grounds and noting that "the ALJ did not err in failing to seek further clarification from Dr. Madsen for his opinions since Dr. Madsen's report was neither incomplete nor inadequate, see 20 C.F.R. § 416.919p(b), but merely inconsistent with other evidence in the record.).

To the extent Plaintiff argues that the ALJ committed legal error by not fully and fairly developing the record because he did not contact Dr. Madsen to obtain an additional report, Plaintiff's argument also fails because, as explained above, Dr. Madsen's report was not found to be "incomplete or inadequate."  Although the nonadversarial nature of social security proceedings "imposes a duty on the ALJ 'to ensure that an adequate record is developed . . . consistent with the issues raise,'" the ALJ met that duty here. *Jimenez v. Astrue*, 385 F. App'x 785, 788 (10th Cir. 2010) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).  Furthermore, in cases such as this one, where Plaintiff was represented by an attorney at the disability hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development."  *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).  In this case there were two hearings held by the ALJ and Plaintiff's counsel made no indication at either hearing that further development of the

record was necessary to decide the matter.  Tr. 26, 47.  In addition, even in the absence of Plaintiff's attorney raising this issue, "'[t]he standard' for determining whether the ALJ fully developed the record 'is one of reasonable good judgment.'"  *Segura v. Barnhart*, 148 F. App'x 707, 710 (10th Cir. 2005) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)).  The ALJ's "starting place must be the presence of some objective medical evidence in the record suggesting [the] existence of a condition which could have a material impact on the disability decision *requiring further investigation*."  *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citing *Hawkins*, 113 F.3d at 1167) (emphasis in *Howard*).  If there is sufficient information to make a disability determination, the record is sufficiently developed.  *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008); 20 C.F.R. § 404.1520b.  Here, even with a vague report from Dr. Madsen, there is no argument from Plaintiff regarding the existence of a condition that required further development.  The ALJ's findings are supported by substantial evidence and Plaintiff has not shown that the ALJ committed a legal error.  Therefore, the Court finds that the ALJ has not committed reversible error with respect to his treatment of Dr. Madsen's opinion.  *Glenn*, 21 F.3d at 988.

### C.    Dr. Wharry

Plaintiff argues that it was improper for the ALJ to use "evidence from the examining physician reports to bolster Dr. Wharry's opinion despite rejecting those opinions . . . ."  *Brief* [#17] at 34.  Plaintiff also maintains that the ALJ "did not offer a valid reason for giving more weight to the nonexamining physician's opinion than was given to the examining physicians[']."  *Id*.  With regard to Dr. Wharry, the ALJ found that her opinion was

well supported and consistent with the record as a whole, based on rare,

> subjective complaints of social avoidance, impaired social judgment on mental status examinations, and observations of poor hygiene, but with maintenance of appropriate interaction with all interviewers, and the ability to travel within the community and interact sufficiently to obtain services and meals (Exhs. B5F; B6F; B12F; B19F; B21F; B24F).

Tr. 19. As a result, the ALJ "accorded great weight to the opinion of" Dr. Wharry. Tr. 19. As Plaintiff notes, Dr. Wharry was an examining psychologist, not a treating doctor. Her assessment, therefore, was based on the entire record provided to her as of the date of her assessment, April 23, 2010. Tr. 353. Therefore, it is not possible that Dr. Wharry relied on either of Dr. Rodriguez's assessments concluded in August 2011 and August 2012,[11] which were rejected by the ALJ, because they were completed after Dr. Wharry rendered her opinion.[12] With regard to Plaintiff's argument that it was improper for the ALJ to give Dr. Wharry's opinion "great weight," Tr. 19, even though the ALJ allegedly "rejected" Dr. Rodriguez's opinion, as explained above, the ALJ gave Dr. Rodriguez's opinion "little weight," he did not reject it in its entirety. Tr. 18.

Plaintiff also appears to argue that because Dr. Wharry was a nonexamining doctor, her opinion should not have been afforded more weight than an examining doctor. *Brief* [#17] at 35. Plaintiff is correct to note that the type of evidence available to an expert

---

[11] To the extent Plaintiff believes that Dr. Wharry's opinion relied on Dr. Rodriguez's and Dr. Madsens' opinions because the ALJ cited to records provided by them when explaining why he afforded "great weight" to Dr. Wharry's opinion, the ALJ's analysis does not imply that Dr. Wharry did rely on them. Instead, the ALJ cited to Exhibits B6F, B12F, B19F, B21F, and B24F in support of his statement that Dr. Wharry's conclusion was consistent with the record as a whole. This, for example, relates to the ALJ's conclusion that Plaintiff "interact[ed] sufficiently to obtain services," Tr. 19, which is reflected in those exhibits because they show Plaintiff obtaining services from Dr. Rodriguez.

[12] As Defendant notes, "Plaintiff appears to only challenge the ALJ's findings regarding the 2011 and 2012 mental functional capacity forms" completed by Dr. Rodriguez. *Response* [#20] at 13 n.14.

should be taken into account when considering the weight to be given to that doctor's opinion.  For example, the Tenth Circuit has explained that

> The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2); Soc. Sec. R. 96–6p, 1996 WL 374180, at *2.

*Robinson v. Barhart*, 366 F.3d 1078, at 1084 (10th Cir. 2004).  However, as the Tenth Circuit further explained, the ALJ can assign less or more weight to any expert opinion so long as the ALJ provides "a legally sufficient explanation for doing so."  *Id.*  The ALJ provided such an explanation in this case.  As noted above, the ALJ explained that Dr. Wharry's opinion was "well supported and consistent with the record as a whole" and then provided specific citations to the record.  Tr. 19.  For these reasons, the Court rejects Plaintiff's argument that "[t]he ALJ improperly afforded more weight to Dr. Wharry's opinion than was given to the opinions of Drs. Rodriguez and Madsen without a compelling reason."  *Brief* [#17] at 38.  Therefore, the Court finds that the ALJ has not committed reversible error with respect to his treatment of Dr. Wharry's opinion.  *Glenn*, 21 F.3d at 988.

## C.   Reading and Writing Limitations

Finally, Plaintiff argues that the ALJ committed legal error because the "RFC finding does not account for plaintiff's deficits in reading and writing without a proper explanation."  *Brief* [#17] at 38.  First, Plaintiff argues that "[t]he ALJ did not state any reason for failing to account for plaintiff's reading and writing deficits in the RFC finding."  *Id.* at 39.  This is incorrect.  The ALJ noted in his Decision that Plaintiff alleged "a limited capacity to read and write." Tr. 14. Later, when evaluating the evidence in the record, the ALJ explained that

despite the claimant's allegations that he is unable to read or write, he completed his own function report, with spelling errors, but in an understandable manner, with answers appropriate to questions (Exh. B5E).

Thus, the evidence of mental functional difficulties also fails to persuade the Administrative Law Judge that the claimant lacks the capacity to perform less complex and less socially engaged tasks on a sustained basis.

Tr. 16. Because Plaintiff is simply incorrect when he argues that the ALJ "did not state any reason for failing to account for plaintiff's reading and writing deficits in the RFC finding," *Brief* [#17] at 39, this argument fails.

Second, Plaintiff argues that the ALJ "failed to explain why his findings changed from the initial hearing to the remand hearing." *Id.* In the ALJ's initial Decision, he included a limitation regarding Plaintiff's ability to read and write. Specifically, he found that Plaintiff could perform a job "requiring little independent reading and writing (meaning a job with low general educational demands) . . . ." Tr. 80. As noted above, this first Decision was vacated and remanded for further proceedings. Tr. 91-96. Thus, it was never a final decision by the Commissioner and was not binding. Social Security regulations provide that, in the event the Appeals Council orders a remand, the ALJ "shall initiate such additional proceedings and take such other action . . . as is directed by the Appeals Council in its order of remand. The Administrative Law Judge may take any additional action not inconsistent with the order of remand." 20 C.F.R. § 410.665(b); *see also* 20 C.F.R. § 416.1477(b) (noting that an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order"). The argument made by Plaintiff is similar to an argument addressed by the Seventh Circuit in *Key v. Sullivan*, 925 F.2d 1056 (7th Cir. 1991). As the Seventh Circuit explained, "[a] recommended decision never becomes final and binding

unless and until it expressly is adopted by the Council." *Id.* at 1060; *see also Gibbs v. Barnhart*, 130 F.App'x 426, 430 (11th Cir. 2005) ("[plaintiff's] contention that the second ALJ was legally bound by the first ALJ's findings that [minor's] ADHD and anemia were 'severe' impairments is without merit."); *Cunningham v. Colvin*, 2014 WL 4458894, at *3 (N.D. Ala. Sept. 9, 2014) ("[B]ecause the Appeals Council vacated the first ALJ's written decision, the specific findings contained in that first written decision were never conclusively established and were subject to modification").  Here, the initial Decision was explicitly vacated by the Appeals Council.  As a result, it did not become final and was not binding on the ALJ.  Further, the ALJ's action of reviewing the evidentiary record as a whole and concluding that he did not need to include the same reading and writing limitation in the RFC was "not inconsistent with the Appeals Council's remand order."  20 C.F.R. § 416.1477(b).  The remand order required the ALJ to take five specific steps and "issue a new decision."  Tr. 94.  Therefore, the ALJ was not bound by the prior Decision and it was not improper for him to reach a different RFC in the second Decision.  As a result, the Court concludes that the ALJ did not commit reversible error with respect to this issue.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  September 29, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge